BOARD OF COMMISSIONERS OF CHATHAM COUNTY v.
E. A. THORN et al.

*County Lines—Survey by order of General Assembly—
Right of Legislature to Erect New Counties and Change
Boundary Lines—Injunctions—Parties.*

1. In an action by the commissioners of Chatham county to restrain commissioners appointed by act of General Assembly, to locate the boundary line between Chatham and Alamance counties, "according to the original survey of 1770, establishing the county of Chatham," the allegation was that they were not locating the line correctly, and the county of Alamance was not made a party ; *Held,* the court being without jurisdiction will not give a construction of the acts of Assembly.

2. It is within the power of the General Assembly, at its will, to establish new counties and change the boundary lines of existing counties, and hence an injunction will not lie to restrain the action of commissioners appointed by the Legislature to survey and determine the boundary line between two counties on the ground that such survey will change the boundary and work irreparable damage to one of the counties.

This is an action brought by the commissioners of Chatham county against the commissioners appointed under chapter 303, Acts of 1895, to restrain them from proceeding further in their survey, and heard before *Greene, J., at Chambers,* at Graham, on the 25th of May, 1895, on a motion for an injunction, on complaint, answers and affidavits. The complaint was as follows :

"The plaintiffs, complaining, allege:

"1. That, on the 13th day of March, 1895, the General Assembly of North Carolina enacted the following Act, viz.: 'An Act to locate county line between Alamance and Chatham counties.'

" ' *The General Asembly of North Carolina do enact*:

" 'SECTION 1. That John M. Coble of Alamance county, and Alson Lineberry, of Chatham county, be and are hereby appointed commissioners to locate the county line between Alamance and Chatham counties *according to the original survey of* 1770 establishing the county of Chatham, and said commissoners shall choose one surveyor from Alamance county and one from Chatham county and two chain carriers, and it shall be the duty of said commissioners to survey, locate and mark the said county line, and if said commissoners shall fail to agree on the line, then it shall be the duty of said commissoners to select the third man and the decision of said commissoner shall be final.

" 'SEC. 2. The said commissoners shall be allowed for their services while employed in the said survey, two dollars per day and necessary expenses. The surveyors shall be allowed three dollars per day and expenses and the chain carriers shall be paid one dollar per day and expenses. The expenses of said survey shall be shared equally, between Alamance and Chatham counties; *provided,* that when the survey has been completed and it shall be found that there shall be no change from the present location, then the expenses of said survey shall be paid by the said county of Alamance, but if the present line is found incorrect then the expenses of said survey shall be shared equally between the said counties of Alamance and Chatham.

" 'SEC. 3. That this act shall be in force from and after its ratification.

" 'Ratified this the 13th day of March, A. D. 1895.'

"II. That, in accordance with the said Act, the defendants, J. M. Coble and W. A. Lineberry, the commissioners therein named, met with their surveyors and chain-carriers at Hillsboro, N. C., on the 8th day of April, 1895, and

selected E, A. Thorne as the 'third man,' to act with them      a commissioner, as authorized by the said Act.

"III. That the defendants, as commissioners as aforesaid, instead of locating the dividing line between the counties of Alamance and Chatham, 'according to the original survey of 1770 establishing the county of Chatham,' as authorized and directed by Section 1 of the said act, they have proceeded to locate, and are now surveying and wrongfully and illegally locating and marking  a new line as the dividing line between the said  counties of Alamance and Chatham, and are endeavoring to establish as the said line, a line which they allege the surveyors should have run in 1770, according to the Act of Assembly, creating the county of Chatham out of a part of the county of Orange,  and not the line of the actual original survey of 1770, as authorized and directed by the said Act, set forth in Allegation 1 of this complaint—thereby, as plaintiffs are advised and believe, exceeding and transcending their authority, the immediate  effect of which unlawful  action by said commissioners will be to annex to the county of Alamance a large and valuable portion of the county of Chatham, some 17 or 18 miles long and from two to four miles  wide,  in  violation of law, as plaintiffs are  advised and believe.

"IV. That if the defendants, commissioners as aforesaid, are permitted to locate the said county line as they are now surveying, locating and marking the same, the county of Chatham, as plaintiffs are informed and  believe, will suffer irreparable damage and loss, and be wrongfully and illegally deprived of a large number of taxable polls and a large amount of taxable property, without a corresponding decrease in the cost of municipal government of the said territory, from which polls and property the county of Chatham has heretofore received,  and is justly entitled

to receive hereafter, a large amount of taxes, to—wit: from $500 to $1,000 annually, and the plaintiffs will be prevented from exercising that control and authority over the inhabitants, property, highways, schools, etc., in the said territory, which is their legal right, to their irreparable damage.

"V. That if the defendants, as commissioners, as aforesaid, are permitted to locate the said county line as they are now surveying, locating and marking, plaintiffs are advised and believe that it will result in continuous and vexatious litigation between the two counties of Alamance and Chatham, and between the inhabitants of the said territory and of said counties.

"VI. That summons has been issued in this action against the defendants.

"Wherefore, the plaintiffs demand judgment :

"1st. That the defendants be restrained and perpetually enjoined from proceeding with the location of the county line between Alamance and Chatham counties as they are now surveying, locating and marking the same.

"2d. That the defendants, as commissioners, as aforesaid, be required to locate the said line according to the original survey of 1770; that is to say, according to the survey made at that date.

"3d. For the cost of this action, to be taxed by the clerk.

"4th. For such other and further relief as to the court may seem right and proper."

The defendants, E. A. Thorne and John M. Coble, answered to the complaint as follows (after admitting articles 1 and 2 thereof) :

"3. That allegations in Article 3 are denied, and the defendants, answering, own the facts to be as follows, and not otherwise. That by authority and under the Act of the

General Assembly, a certified copy of which is hereto attached as part of this answer, marked 'Exhibit A,' as aforesaid, the defendants, John M. Coble and W. A. Lineberry, had agreed upon E. A. Thorne, as the third man, and by agreement they all three, with the selected surveyors and chain carriers, met in Hillsboro, Orange county, on the 8th day of April, 1895, and began their work as commissioners under said Act of Assembly. They started at a point in Hillsboro, a few feet—say about 35 feet— north of the court-house, which is one thousand and sixty-five feet north of Eno river, which was the southern boundary of the corporate limits of Hillsboro in 1770–'71, and run due south sixteen miles, without finding any monuments designating a corner, or line; but at the end of sixteen miles, they found themselves about a mile and a third, or a mile and four-tenths, into the territory that has been regarded as Chatham county. Finding no monument to fix the corner, they fixed it by the calls of the Act creating Chatham county, and started with their survey due west, and proceeded about six miles, when they stopped, called in the old people and heard counsel in behalf of the plaintiff, and for two days and a half hunting for monuments that might aid them in their work. They were unable to find anything more trustworthy than a tradition, as to points in a line—not even well authenticated as a tradition—and the different points claimed as in the original line were so situated that a straight line would not, by a considerable distance, touch any three of them consecutively and a west line not by a considerable distance, touch any two of them; so that none other than a crooked line, with as many angles as there are traditional points of location of the original line, could be run, if traditional points were depended upon. Thus they proceeded with a due west line, marking as they went, until within about one and a

half miles of the Randolph county line, and had nearly completed their labors when they were commanded to desist by an order of a Judge of this court. That nowhere at or near the line claimed by any one, or elsewhere, after diligent search, were they able to find any monument designated, any corner, or the location of any surveyed line.

"4. That in answer to allegations in Article 4, these defendants are advised, and so own, that the Legislature has power to direct and authorize the establishment of dividing lines between counties, and they deny that the line that they were proceeding to run and mark, would take from Chatham county any territory that was ever included in her rightful boundary; that it would enable Alamance county to receive the taxes upon property and polls that have been rightfully hers since her creation as a county, and simply take from Chatham the benefit of territory and population that belongs of right to Alamance, and has been so long enjoyed by Chatham, could be the only result; and it is denied that Chatham county, by the establishment of the line, which was nearly completed, would suffer in any of her rights or rightful interest.

"5. That they have not information or knowledge sufficient to form a belief as to whether the forecast of the future by plaintiff is correct and true, or not, as alleged in Article 5, but submit that 'continuous and vexatious litigation' depends upon the disposition of people who engage in it.

"And, having answered, they demand judgment: That they be permitted to complete their work, in obedience to the commands of the Act, and they go without day, and recover their costs."

The defendant Lincberry answered, admitting the allega-

tions of the complaint.    His Honor refused the injunction
and plaintiffs appealed.

*Messrs. Womack & Hayes* and *H. A. London*, for plain-
tiffs (appellants).

*Messrs. E. S. Parker* and *J. A. Long*, for defendants.

FAIRCLOTH, C. J.:    The Act of 1895, Ch. 303, appointed
the defendants "to locate the county line between Ala-
mance . and Chatham counties according to the original
survey of 1770 establishing the county of Chatham," and
provided for the expenses in certain contingencies.    Whilst
the defendants were engaged in their duties they were
restrained from proceeding further on the allegation that
they were not locating the line correctly and according to
the direction in the said Acts of Assembly.    Upon the final
hearing the Judge below vacated the restraining order and
refused to grant an injunction and the plaintiffs, commis-
sioners of Chatham county, appealed.    The main argument
before us was upon a construction of the words "according
to the original survey of 1770 establishing the county of
Chatham," in said Act of 1895, in its connection with the
other said Act, and certain questions of evidence.    We
find ourselves unable to respond to the argument or to
give a construction to said Acts, because the Court is with-
out jurisdiction in the matter.    Alamance County is not a
party to this action and would not be bound by any con-
clusion or order of the Court, and the defendants have no
official interest in the controversy.    They are simply the
agents of the Legislature to execute its command.    The
plaintiffs allege that if the lines are located as now being
run by the defendants, Chatham county will sustain an
irreparable damage; that is, it would lose territory and
financial support, and ask for an injunction on that ground.

That conclusion is not sound. Counties are laid out and the boundaries established as directed by the Legislature and these boundaries exist at the will of the Legislature, subject to be changed at any time by it, and this is well understood in the organization of the same ; otherwise, new counties could not be established nor any sub-divisions had unless consented to by the original corporate bodies. So, no injunction can rest upon the idea of irreparable damage. And there is no equitable ground on which to rest an interference of the Court by an injunction for the reasons above stated.

We are of the opinion that his Honor committed no error.

Judgment Affirmed.