### UNITED STATES v. SOUTHERN OREGON CO.

(Circuit Court, D. Oregon. May 20, 1912.)

No. 3,701.

1. TAXATION (§ 5*)—PROPERTY TAXABLE—LANDS BELONGING TO GOVERNMENT.

Lands belonging to the United States cannot be taxed by a state or by any governmental subdivision thereof.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 17, 31-35; Dec. Dig. § 5.*]

2. TAXATION (§ 5*)—PROPERTY TAXABLE—PROPERTY OWNED BY UNITED STATES.

Where Congress has prescribed the conditions on which portions of the public domain may be alienated, and provided that on the performance of the conditions a patent shall issue to the purchaser, lands distinctly defined as to which all such conditions have been complied with are taxable to the purchaser, notwithstanding the government has not yet issued its patent, and the legal title still remains in it.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 17, 31-35; Dec. Dig. § 5.*]

3. ESTOPPEL (§ 68*)—EQUITABLE ESTOPPEL—CLAIM IN JUDICIAL PROCEEDINGS.

Act Cong. March 3, 1869, c. 150, 15 Stat. 340, granted to Oregon certain public land in aid of a military road on condition that the land should

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not be sold to any person in quantities greater than a quarter section, and for a price exceeding $2.50 per acre. The state granted the land to a wagon road company to which patents were issued by the United States, and the road company in violation of the condition conveyed all the land in bulk to defendant. *Held* that, the United States having instituted a suit to decree a forfeiture of the land for breach of condition, defendant while denying the right of the government was not entitled to have two counties of Oregon in which the land was located made parties to the suit to restrain the collection of taxes levied on the land, on the theory that the government had such an interest therein as to exempt the lands from taxation by the state.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*

Lands of the United States not subject to state taxation, see note to Northern Pac. R. Co. v. Wright, 4 C. C. A. 196.]

Action by the United States of America against the Southern Oregon Company to forfeit certain land granted to the state in aid of the construction of a military wagon road, in which defendant prayed that Douglas and Coos counties, Or., be made parties defendant, and that they and the sheriff and tax collector of each of the counties be restrained from enforcing the collection of taxes levied on the lands for the years 1909 and 1910. Petition denied.

This proceeding is brought on by the petition of the defendant praying that Douglas and Coos counties, Or., be brought in and made parties defendant also to the suit of the government, and that thereupon they and the sheriff and tax collector of each of said counties be restrained and enjoined from enforcing the collection of the taxes levied for the years 1909 and 1910 against the lands standing in the name of the Southern Oregon Company, and which lands it is the purpose of the main suit to have forfeited to the government. The petitioner sets out that the lands taxed were granted by Congress March 3, 1869 (Act March 3, 1869, c. 150, 15 Stat. 340), to the state of Oregon, to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg in said state; that by an act of the Legislative Assembly of the state of Oregon said grant was donated to the Coos Bay Wagon Road Company; and that petitioner is the successor in interest to the said Coos Bay Wagon Road Company, and as such is now in possession of, and claims to own, all and singular the lands situated in the counties named as shown by schedule attached to the petition marked "Exhibit A." It is further alleged that it is the purpose and object of the bill of complaint filed by the United States to have it decreed that the defendant, the petitioner, has no estate, right, or title in or to said lands or any part thereof, and that the same have been and are forfeited to, and the title to all of said lands has been and is reinvested in, and said lands now are the property of, the United States of America, and to have the said title of the United States in them quieted and confirmed, particularly against any claim, right, title, interest, or lien in behalf of the petitioner or on its part. .

It is further alleged that the lands designated have been assessed by the county assessors of Coos and Douglas counties for the years 1909 and 1910 to petitioner, showing the amounts levied against each parcel by schedule attached to the petition; that the said taxes so levied are unpaid and delinquent; that said lands have been advertised for sale, and the expense of advertising added to the tax against each parcel; that the sheriff and tax collector of each of said counties threatens to, and will unless restrained, proceed to issue certificates of delinquency on account of said tax charges against the real property, and will sell and dispose of such certificates to such parties as may apply therefor, and that said sale or sales of said certificates of delinquency will incumber .the title to said real property and involve a multiplicity of suits and interminable litigation.

It is then further alleged that, under the Constitution and laws of Oregon,

all real and personal property of the United States is exempt from taxation, and that, if the contention of complainant is well founded and is to prevail, the said lands are not subject to assessment and taxation, and were not during the years named.

To this petition the counties of Douglas and Coos, and the sheriff and tax collector of each, have interposed a demurrer, on the ground that it does not set forth facts sufficient to constitute any ground for making them or any of them defendants in the suit pending, or for awarding the relief prayed for.

The cause was heard upon the demurrer.

John McCourt, U. S. Atty., and B. D. Townsend, Sp. Asst. Atty. Gen.

Dolph, Mallory, Simon & Gearin, for defendant.

Brown & Eddy, for Douglas and Coos Counties and others.

WOLVERTON, District Judge (after stating the facts as above). It is the contention of counsel for petitioner that since the government has sued to have forfeited to it the lands taxed the petitioner has no such title therein as will subject them to assessment and taxation by the counties in which they lie. The demurrer goes to the sufficiency of the petition upon which to award the relief sought. The facts set forth in the petition, of course, must be taken as true, and, further than this, the allegations in the complainant's bill touching the grant of these lands and the conditions upon which the grant was made must also be taken as true, as the petition seems to base the want of title in the petitioner upon the allegations of the bill in that respect; otherwise, there is nothing to show, nor any grounds upon which to predicate, the absence of a taxable title in the petitioner. In other words, the petition must be read and construed along with the allegations of the bill for forfeiture, if the petitioner has any cause for relief. The petition shows that defendant, the petitioner, is the successor in interest of the Coos Bay Wagon Road Company, and as such is now in possession of, and claims to own, all and singular the lands and real property situated in the counties of Coos and Douglas, described in the schedule. These are the same lands sought to be forfeited to the United States. But it is said further, that the sale or sales of said certificates of delinquency will incumber the title to said real property. It may be asked, What title? Not the title of the government, because the petitioner is not concerned with that title. It is concerned only with its own title, whatever that may be. But, however this may be, the bill shows that by act of Congress of March 3, 1869, the United States granted these lands to the state of Oregon in aid of the construction of a military wagon road, with the proviso that the grant "shall be upon the condition that the lands shall be sold to any one person only in quantities not greater than one quarter section, and for a price not exceeding two dollars and fifty cents per acre"; that the state of Oregon donated the grant to the Coos Bay Wagon Road Company; that patents have been issued by the United States to said road company, and, in effect, that said road company has parted with its title in bulk, and not to persons in tracts of 160 acres to one person; that the defendant, the petitioner, has succeeded to that title. It is claimed, therefore, that the condition of the grant has been broken, and for that reason the title is and

ought to be forfeited to the United States. The condition is relied upon as a condition subsequent, not in any sense a condition precedent, and it is claimed that the grant from the government consequently vested in the grantee, not to be disturbed except for a breach of the condition subsequent imposed by the grant. From all this it would appear that the defendant petitioner is the holder of the title to these lands by mesne conveyances under the patents from the government. Being such holder, is it exempt from taxation by the counties of Douglas and Coos because the United States is seeking to forfeit the lands for breach of an alleged condition subsequent?

It must be premised that Congress by its resolution of April 30, 1908, No. 18, 35 Stat. 571, did not by force of the resolution itself forfeit these lands to the general government, but authorized the Attorney General to assert in behalf of the United States the claim to such forfeiture, and that is in purpose what the suit was instituted for. The Enabling Act for the admission of the state into the Union (Act Feb. 14, 1859, c. 33, 11 Stat. 384, Sixth Proposition, § 4), as well as section 3554 Lord's Laws of Oregon, inhibits all taxation by the state of any property of the general government, whether real or personal; and it is needless to examine authorities to the same purpose.

[1] It is plain, and indeed axiomatical, that the United States cannot be taxed by a state, and, a fortiori cannot be taxed by any county of a state. Where, however, the government has parted with title to its lands by patent, the case would be an exceptional one where such lands were not taxable to the holder of the title under the patent. At least the taxes could not be avoided on the ground that the title was in the United States. Even under an exception to the general rule, the possession of the legal title by the government does not determine the fact and the right of ownership.

[2] The exception is where Congress has prescribed the conditions upon which portions of the domain may be alienated, and provided that, upon the performance of the conditions, a patent shall issue to the purchaser. When all such conditions are complied with, the land alienated being distinctly defined and it only remaining for the government to issue its patent, the purchaser becomes the equitable, and will be treated as the beneficial, owner of the land, and the government will be regarded as holding merely the legal title. In such a case the land is taxable by state authority to the purchaser, notwithstanding the legal title yet rests with the government. Wisconsin Railroad Co. v. Price County, 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687; Carroll v. Safford, 3 How. 441, 461, 11 L. Ed. 671; Witherspoon v. Duncan, 4 Wall. 210, 218, 18 L. Ed. 339.

[3] But here, the patents having issued, the title passed and the lands are taxable by the state to the holder, unless the condition in the grant relied upon as a condition subsequent and the suit instituted to enforce the forfeiture relieves them of that burden. The case of Baltimore Shipbuilding Co. v. Baltimore, 195 U. S. 375, 25 Sup. Ct. 50, 49 L. Ed. 242, is most instructive. There the land sought to be taxed by the city of Baltimore had been conveyed by act of Congress

to the plaintiff, the Baltimore Shipbuilding Company. By the terms of the deed, under the requirements of the act, the conveyance was upon condition that the company, after having constructed a dry dock upon the land, should "accord to the United States the right to the use forever of the said dry dock at any time for the prompt examination and repair of vessels belonging to the United States free from charge for docking and that if at any time the property hereby conveyed shall be diverted to any other use than that herein named or if the said dry dock shall be at any time unfit for use for a period of six months or more, the property hereby conveyed with all its privileges and appurtenances shall revert to and become the absolute property of the United States." The condition was relied upon as still keeping the land outside the taxing power of the state. It was argued that by reason of the condition the United States had such an interest in the land as to prevent the tax. Mr. Justice Holmes, answering the argument, says:

"This is a mere condition subsequent. There is no easement or present right in rem. The obligation to keep up the dock and to allow the United States to use it carries active duties, and is purely personal. The property is subject to forfeiture, it is true, if the obligation is not fulfilled. But it is only by forfeiture that the rights of the United States can be enforced against the res. It would be a very harsh doctrine that would deny the right of the states to tax lands because of a mere possibility that they might lapse to the United States. The contrary is the law. The condition cannot be extinguished by the state, but the fee is in the dock company, and that can be taxed, and, if necessary, sold, subject to the condition."

This affords answer to the question involved here, save that suit has been instituted here for the forfeiture. But it is not conceived that that circumstance alters the case. Petitioner does not admit that its lands are subject to forfeiture, nor that the grant is accompanied by a condition subsequent, much less that the condition, if so it be, has been broken. It only says that the title is questioned by the government upon a claim that it is subject to forfeiture for an alleged breach of what the government terms a condition subsequent. In other words, petitioner is not yielding in any measure its claims of absolute title to the lands; nor is it admitting in any respect the government's claim to forfeiture of such lands. Maintaining such a position, can it be heard to say that it has no such title as is taxable by the state, or that the United States has the title, or such an interest therein as to inhibit the state from exercising the taxing power respecting it? Northern Pacific Railway Co. v. Myers, 172 U. S. 589, 19 Sup. Ct. 276, 43 L. Ed. 564, is apposite. That case involved the validity of a tax levied under the laws of Montana against certain lands lying within the grant to the Northern Pacific Railroad Company. No patent had issued to the railroad company, and at the time there was a controversy between the railroad company and the Interior Department as to the character of the lands, whether mineral or nonmineral. That is to say, no final determination had been had as to the mineral or nonmineral character of the lands, and no segregation thereof had been made; the grant of the government excluding therefrom all mineral lands. The question involved was whether a state could tax

the grant prior to a segregation of the lands according to their character. After alluding to Act Cong. July 10, 1886, c. 764, 24 Stat. 143 (U. S. Comp. St. 1901, p. 1476), providing that no such lands granted shall be exempt from taxation by states on account of the lien of the United States upon the same for cost of surveying, etc., or because no patent has been issued therefor, and after alluding to the case of Deseret Salt Co. v. Tarpey, 142 U. S. 241, 12 Sup. Ct. 158, 35 L. Ed. 999 (wherein it was held that the legal title passed by such grants as distinguished from merely equitable interests, and an action was sustained prior to issuance of patent under the grant), and the case of Barden v. Northern Pacific Railroad, 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992 (where a similar action was denied to the company on the ground that mineral lands were not conveyed by the grant), the Supreme Court, speaking through Mr. Justice McKenna, disposed of the controversy as follows:

"The accommodation of these cases is not difficult. In the Barden Case there was a concession that the land was mineral, and there was an attempted recovery of valuable ores. In the Deseret Case there was no such concession, and the primary effect of the grant prevailed. In the case at bar there is no such concession, and the primary effect of the grant must prevail. There is no presumption of law of what kind of lands the grant is composed. Upon its face, therefore, the relation of the railroad to every part of it is the same, and on the authority of Deseret Salt Co. v. Tarpey ejectment may be brought for every part of it. The action, of course, may be defeated, but it may prevail, and a title which may prevail for the company in ejectment surely may be attributed to it for taxation, to be defeated in the latter upon the same. proof or concession by which it would be defeated in the former. An averment that there is a controversy about the character of lands not yielded to, an expression of doubt about it not acted on, is not sufficient. This view does not bring the railroad company to an unjust dilemma. The company has the title or nothing. In response to its obligations to the state, it must say which. If it have the title to any of the lands, this title cannot be diminished to a claim, or an interest because it has not or may not have title to others. If there is uncertainty, it must be resolved by the railroad."

The language of the court has pertinent application here. The averment by petitioner that there is a controversy touching the forfeiture of these lands to the general government, without yielding one iota to the claim of the government, is not sufficient to defeat the tax on the ground that the government has such an interest in the lands as to exempt them from taxation by the state.

From these considerations, it follows that the demurrer to the petition should be sustained, and it is so ordered.

It must not be inferred by anything that has been said in this opinion that I have passed in any way upon any of the questions sought to be presented by the main case.